(Not for Publication)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
:
SHIRLEY GACUTAN,                           :
                                           :
          Plaintiff,                     :          Civil No. 07-0005 (RBK)
                                           :
          v.                             :          **OPINION**
                                           :
JOHN E. POTTER,                            :
                                           :
          Defendant.                     :
_____:

**KUGLER**, United States District Judge:

      Presently before the Court is a motion by Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant") for summary judgment on the claims brought by Plaintiff Shirley Gacutan pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. For the reasons that follow, Defendant's motion will be granted.

**I.     BACKGROUND**

      Gacutan is an African American woman who during the relevant period, was employed as a mailhandler at the Bellmawr, New Jersey facility of the United States Postal Service ("USPS"). Gacutan generally worked with the same group of employees on her shift, supervised by Supervisor of Distribution Operations Denis Russ. From time to time, Gacutan was assigned to fill in as a temporary supervisor over her coworkers. When she served in this supervisory capacity, she perceived that certain of her male coworkers resented her supervising them and that

they were upset she would not change their break times.

On August 11, 2004, during a shift when Gacutan was working as a mailhandler, not a supervisor, a mailhandler named Jerome Felder told Russ that he did not need to monitor them while they were working. Gacutan then said to Russ, "but they work better when you're watching." (Pl.'s Opp'n Ex. A at 22.) After Russ left the area, Gacutan testified that Devereaux told her "when you're working, something is going to come over [and] hit you." (Id. at 22-23.) Later during that shift, as Gacutan was carrying mail through the work area, a package flew past her. A short time later, Devereaux allegedly repeated his threat and slammed a package down on a surface next to Gacutan's face. She testified that in response, she looked at him, at which point he smiled at her and did not say anything. Devereaux and a witness to the exchange maintain that both Gacutan and Devereaux were joking around in the light-hearted tone that predominated the work area. Gacutan, however, went immediately to Russ to inform him that Devereaux had threatened her. Russ testified that he did not take Gacutan's threat seriously, because it was obvious to him that she was joking.

A few days later, Gacutan went to a different manager, Vicki Rago to report Devereaux's threatening behavior. Rago instructed Gacutan to write a letter to the Postal Inspector detailing the events, which Gacutan did by letter dated August 14, 2004. While Gacutan did not receive a response to the letter, Russ investigated the matter in early September after his supervisor instructed him to do so. As a result of interviews with Devereaux and Felder, Russ concluded that Gacutan and Devereaux had merely been joking around with one another on August 11. Russ's superiors agreed with his determination but moved Gacutan to another work area and instructed that she and Devereaux should interact only when necessary.

Also during the summer of 2004, Lamont Dixon, the union shop steward for Gacutan's work shift, began receiving complaints from mailhandlers that Gacutan was sexually harassing her male coworkers.[1] On August 26, 2004, Dixon reported the complaints to Manager of Distribution Operations Dangilett Johnson. Johnson immediately approached Gacutan about the accusations. Gacutan denied sexually harassing her coworkers and suggested that the complaints might be in retaliation for her August 14 letter to the Postal Inspector reporting Devereaux's threat. This conversation between Johnson and Gacutan was the first time Johnson had heard about the alleged threat, and afterward, she instructed Russ to conduct an investigation of it. In addition, Johnson initiated an investigation of the reports of inappropriate conduct by Gacutan, which was carried out by staff of USPS South Jersey District Labor Relations Office. The investigation of Gacutan's behavior consisted of interviews and reinterviews of Gacutan and twelve of her coworkers as well as written statements by many of those interviewed. In those accounts, Gacutan's coworkers reported that she routinely made comments of a sexual nature to her male coworkers and also frequently groped, chased, tickled, pinched, and sat of the laps of her male coworkers.

On October 4, 2004, during the pendency of the investigation, Gacutan requested an appointment with an EEO Dispute Resolution Specialist concerning perceived retaliation and a hostile work environment. She alleged that one of her coworkers had posted cartoon drawings of

---

[1] It is disputed whether any complaints about Gacutan's misconduct surfaced prior to Gacutan's allegation that Devereaux threatened her. Gacutan states in her opposition brief that there is no evidence that anyone complained before August 14, 2004, the date of her letter to the Postal Inspector. (Pl.'s Opp'n at 6.) On the contrary, Defendant attaches materials generated in the investigation of Gacutan's behavior containing a statement that Anthony Espinola reported that he first complained about Gacutan's harassment in July of 2004 to Art Clark. (Decl. of Andrew Keen at 30.) This disputed issue, however, is not material to the Court's disposition.

a mouse and cheese in the work area, which she construed as being aimed at her reporting the alleged threat by Devereaux to Russ.

As a result of the investigation into Gacutan's conduct, USPS management proposed to remove her from her employment in a Notice of Removal letter dated December 13, 2004. The Notice of Removal cited the findings of the investigation as the basis for the decision. In response, Gacutan filed a grievance challenging the decision under the terms of her collective bargaining agreement. Following a grievance process, Gacutan was reinstated pursuant to a "last chance agreement." That agreement affirmed the Notice of Removal for improper conduct as "just and proper," but provided that Gacutan could return to her job on June 6, 2005 as though she had been on extended leave. The agreement did not award her backpay for the intervening time period, however, which she seeks in this lawsuit.

On August 12, 2005, Gacutan filed an administrative complaint with the USPS EEO Compliance Office alleging that her removal, reduced to a long-term suspension, was due to her race, color, and sex. She also claimed that USPS treated her differently from a white male employee named Christopher Carnovale. Gacutan filed her complaint in this Court on January 2, 2007. She alleges discrimination based on her race and sex as well as retaliation for engaging in protected EEO activity. On October 18, 2007, Defendant moved for summary judgment. Gacutan opposes Defendant's motion.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   DISCUSSION

In an employment discrimination case where, as here, the plaintiff does not present direct evidence of discrimination, courts apply the three-step, burden-shifting standard outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing St. Mary's Center v. Hicks,

509 U.S. 502, 506 (1993)). A rebuttable presumption of unlawful discrimination arises if plaintiff presents this prima facie case. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Then, to rebut this presumption, the defendant employer must set forth admissible evidence of a legitimate, nondiscriminatory reason for the employment decision at issue. Id.; Reeves, 530 U.S. at 142. The employer need not prove that the tendered reason actually motivated the decision. Texas Dep't of Cmty. Affairs, 450 U.S. at 253. The burden of proving intent remains with the plaintiff, who must show "that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic," the plaintiff would have received the job or promotion. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To survive summary judgment plaintiff must either: (I) present sufficient evidence to "cast substantial doubt upon" the employer's proffered reasons for removing her "by painting them as weak, implausible, contradictory, or incoherent," or (ii) present sufficient evidence from which a factfinder could "reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." Fuentes, 32 F.3d at 765. This evidence could include facts showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treats persons not of his protected class more favorably, or that the employer had discriminated against other members of his protected class or other protected categories of persons. Id. For purposes of the USPS's motion for summary judgment, the facts used under this framework are taken in the light most favorable to Gacutan.

### A. Disparate Treatment

To set forth a prima facie case, the plaintiff must demonstrate: (1) she is a member of a

protected class; (2) she was qualified for the job and nonetheless suffered an adverse employment action; and (3) the circumstances of that action give rise to an inference of discrimination based on the protected trait, for instance, nonmembers of the protected class were treated more favorably.  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000) (citing Ezold v. Wolf, Block, Schorr and Solis Cohen, 983 F.2d 509, 522 (3d Cir.1993)).

          i.      The Delayed Investigation

Gacutan contends that if she had been a white male, Russ would have immediately investigated her complaint that Devereaux threatened her.  Defendant argues that this allegation cannot support a prima facie case of disparate treatment, among other reasons, because an employer's delay before initiating an investigation is not a tangible adverse employment action.  In Hare v. Potter, 220 F. App'x 120 (3d Cir. 2007), the plaintiff claimed her complaint of sexual harassment was inadequately investigated because of her sex.  Id. at 134.  There, the Third Circuit found that an allegedly deficient investigation does not amount to an "adverse employment action" for purposes of Title VII.  Id. at 123, 134.  Hare compels the same result here.  Gacutan has not established that the delay of approximately three weeks before investigating her complaint effected a material change in the terms or conditions of her employment.  See id. at 134 (citing Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001)).  Thus, Gacutan cannot set forth a prima facie case on her claim of disparate treatment stemming from the delayed investigation.

          ii.      The Notice of Removal

Gacutan also complains that USPS treated her worse than white males when it subjected her to a Notice of Removal.  In response, Defendant argues that Gacutan cannot succeed on her

claim based on her proposed removal because there are no circumstances suggestive of discrimination and because the outcome of the investigation into her misconduct precipitated the Notice of Removal. Gacutan maintains that she did not sexually harass her coworkers and argues that Defendant should have viewed those allegations as "highly questionable," because her coworkers did not complain until after Gacutan accused Devereaux of threatening her. (Pl.'s Opp'n at 12.)

     The parties do not dispute that Gacutan is a member of a protected class and that her removal is an adverse action capable of supporting a claim of disparate treatment. It is the third element of Gacutan's prima facie case that is in dispute. Gacutan suggests that USPS would not have proposed removing her from her position had she been a white male; however, she offers no evidence to support that contention. Even assuming Gacutan were able to set forth a prima facie case of discrimination, however, she could not carry her burden of demonstrating that Defendant's proffered reason is pretext and that the real reason for proposing her removal was her race and sex. Gacutan has not adduced sufficient facts from which a factfinder could reasonably conclude that it is more likely than not that Gacutan's race and sex were the motivating or determinative cause of her proposed removal, nor has she presented any other evidence that casts doubt on Defendant's proffered reason for removing her. See Fuentes, 32 F.3d at 765. In the investigation, twelve people gave highly detailed accounts of Gacutan's misconduct. There is no evidence to suggest that invidious discrimination, rather than these findings, motivated USPS's response. Consequently, Gacutan's claim of disparate treatment based on the Notice of Removal fails, and Defendant is entitled to summary judgment on that claim.

B.  Hostile Work Environment

Gacutan alleges that she was subjected to a hostile work environment when she endured hostility from her coworkers, selective enforcement of USPS policies against threats, and false claims that she sexually harassed her coworkers. Defendant counters that Gacutan cannot show that her workplace was objectively permeated with hostility so as to have adversely affected the terms and conditions of her employment. Defendant also argues that she cannot establish that any of the incidents of which she complains were the product of her race or sex.

To state a hostile work environment claim under Title VII, the plaintiff must show that (1) she suffered intentional discrimination because of a protected characteristic; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a reasonable person of the same protected characteristic in that position; and (5) the existence of respondeat superior liability. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). In analyzing a hostile work environment claim, the Court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Gacutan has not adduced sufficient evidence from which a reasonable jury could conclude that she was the victim of a hostile work environment. Gacutan herself testified that her coworkers' treatment of her was motivated by the way she acted toward them as a temporary supervisor. Furthermore, there is no evidence that the delay in investigating Gacutan's complaint was due to her race or sex. Finally, a jury would have no basis for concluding that the

accusations that Gacutan sexually harassed her coworkers or the way USPS handled those accusations were motivated by race- or sex-based animus. As such, Gacutan cannot establish a claim for a hostile work environment, and the Court will grant Defendant summary judgment on that claim.

      C.      **Retaliation Claim**

Gacutan alleges that USPS carried out its investigation of her coworkers' allegations against her and issued the Notice of Removal in retaliation for her having engaged in protected EEO activity. In response, Defendant points out that the first time Gacutan consulted an EEO counselor was October 4, 2004, many weeks after USPS South Jersey Labor Relations Office had commenced its investigation into the allegations against her. With respect to the Notice of Removal, Defendant argues that the requisite nexus between protected activity and adverse employment action is missing.

To establish a valid claim for retaliatory discharge, a plaintiff must demonstrate that (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action at the same time or after the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's action. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000); Javil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

In analyzing the causation prong, courts look to the temporal proximity between the protected activity and the alleged retaliatory action. Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003). In some situations, the temporal proximity between the protected activity and alleged retaliatory action may be sufficient by itself to establish a causal link. Id.

(citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1996)).  To infer causation based on temporal proximity only, however, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive."  Id. at 189 n.9 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)) (internal quotation marks omitted).  In cases where the temporal proximity alone is not so close as to justify an inference of causation, the Court must look to "timing plus other evidence" to evaluate causation.  Farrell, 206 F.3d at 280.  Such other evidence includes, but is not necessarily limited to, evidence of ongoing antagonism toward the plaintiff by the defendant and evidence that the defendant gave inconsistent reasons for taking the allegedly retaliatory action.  Id. at 280-81.  The Third Circuit has made clear, however, that the causation inquiry is a generalized inquiry that is not necessarily limited to examining one particular factor or incident.  Id.; Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 179 (3d Cir. 1997); Andrews v. City of Phila., 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

      Here, Gacutan fails to make out a prima facie case of retaliation.  First, USPS initiated its investigation into the complaints that Gacutan was sexually harassing her coworkers on August 24, 2004.  Gacutan did not engage in any protected EEO activity until October 4, 2004, when she first met with an EEO counselor.  Because USPS's investigation preceded her protected conduct, Gacutan cannot satisfy the second prong of her prima facie case of retaliation based on the investigation.  Moreover, USPS did not issue the Notice of Removal until December 13, 2004.  The more than two months separating the Notice of Removal and the protected conduct is not

suggestive of retaliatory motive.  See Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (finding two months between protected activity and adverse action "not so close as to be unduly suggestive" (quoting Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir.2003))).  Due to this lack of temporal proximity, Gacutan must offer some additional evidence to make her case for a causal link between her EEO activity and the Notice of Removal. She fails in that regard.  As previously established, Gacutan offers no evidence to bolster her claim that Defendant proposed her removal for any reason other than as a consequence of its findings in the investigation into Gacutan's conduct toward her coworkers.  Accordingly, Gacutan does not set forth a prima facie case of retaliation, and this Court will grant Defendant's motion for summary judgment on Count Two of Gacutan's complaint.

### IV.    CONCLUSION

Based on the foregoing reasoning, the Court will grant Defendant's motion for summary judgment.  An accompanying Order shall issue today.


Dated: 6/6/08                                                           s/ Robert B. Kugler
                                                                        ROBERT B. KUGLER
                                                                        United States District Judge